UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BILLIE L. DREW,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, [1] Acting Commissioner of Social Security Administration,<br><br>    Defendant. | No.  CV-12-3080-RHW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENTAND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 19, 21. James Tree represents Plaintiff Billie L. Drew. Assistant United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney Jordan D. Goddard represent the Defendant Commissioner of Social Security (the "Commissioner"). Plaintiff brings this action seeking judicial review under 42 U.S.C. § 405(g) of the Commissioner's final decision, which denied her application for a period of disability and disability insurance benefits ("DIB").

After reviewing the administrative record and the parties' briefs, the Court is

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENTAND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT * 1**

now fully informed. For the reasons set forth below, the Court denies Defendant's Motion for Summary Judgment, and directs entry of judgment in favor of Plaintiff.

## I.   Jurisdiction and Procedural History

On October 29, 2004, Plaintiff protectively filed an application for DIB, alleging disability beginning on October 29, 2004. Transcript (hereafter "Tr.") 75-79, 421. Plaintiff's claim was denied initially on January 25, 2005, and upon reconsideration on April 14, 2005. Tr. 56-60, 63-66. Thereafter, Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  Plaintiff then appeared with counsel and testified at a hearing held April 24, 2007, in Vancouver, Washington. Tr. 381-92. However, during the hearing presided over by ALJ Dan Hyatt, Plaintiff threatened to commit suicide if denied benefits. Tr. 391. As a result, the ALJ ordered a psychiatric evaluation and rescheduled the hearing. Tr. 391-91.

On October 18, 2007, ALJ Hyatt held a second hearing where Plaintiff appeared with counsel and testified. Tr. 393-417. The ALJ also heard testimony from Brandie Edmundson (Plaintiff's daughter) and vocational expert ("VE") Gail Young. Tr. 403-16. On March 17, 2008, the ALJ issued a decision denying benefits. Tr. 16-23. Subsequently, the Commissioner's stipulated motion for remand was granted by Magistrate Judge Cynthia Imbrogno, U.S. District Court for the Eastern District of Washington on April 5, 2011. Tr. 439-43. The matter was then remanded to the Commissioner for additional administrative proceedings. Tr. 445.

On February 1, 2012, a new hearing was conducted by ALJ Steve Lynch upon remand. Tr. 470-94. Plaintiff, who was represented by her attorney, appeared by video and testified at the hearing, along with Dr. William F. Spence, M.D., an impartial medical expert. *Id.* In addition, VE Gary Jesky also testified. Tr. 490-95. On February 6, 2012, the ALJ issued a decision denying benefits. Tr. 421-32.

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 2**

Subsequently, the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the Commissioner's final decision and subject to judicial review. Thus, Plaintiff's claim is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.     Sequential Evaluation Process

The Social Security Act (the "Act') defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

**Step 1:**  Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If she is not, the ALJ proceeds to step two.

**Step 2:**  Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the

disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the step three.

**Step 3:** Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the step four.

**Step 4:** Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, the ALJ proceeds to the final step five.

**Step 5:** Is the claimant able to perform other work in the national economy in view of her age, education, and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The claimant bears the burden of proof at steps one through four as detailed above. *Molina v. Astrue,* 674 F.3d at 1104, 1111 (9th Cir. 2012); *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that: (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

///

///

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 4**

### III. Standard of Review

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (per curiam) (internal citation omitted). In determining whether this standard has been satisfied, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal citation omitted).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (internal citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Plaintiff was 49 years-old as of her alleged

onset date of disability. Tr. 75. In 1979 Plaintiff earned her G.E.D., and worked as a machine operator in a lumber mill for 17 years. Tr. 89, 93.

Plaintiff alleges that she is unable to work due to a combination of impairments, including depression, and the following physical impairments: Addison's Disease, polyglandular syndrome, and osteopenia. ECF No. 19 at 3.

### V.     The ALJ's Findings

The ALJ determined Plaintiff was not disabled under sections 216(i) and 223(d) of the Act, and denied her application for period of disability and DIB, protectively filed on October 29, 2004. *See* ALJ's Decision, February 6, 2012, Tr. 421-32.

At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of October 29, 2004, through March 18, 2008, the onset date established on a subsequent application in which Plaintiff was found disabled. Tr. 421; *see also* ECF No. 19 at 3.

At **step two**, the ALJ found Plaintiff's depression, Addison's Disease, polyglandular syndrome, and osteopenia were severe impairments according to the Social Security Act's definition. Tr. 424 (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1 (the "Listings"). Tr. 424-25.

At **step four**, relying on the VE's testimony, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work [2] as defined in 20 CFR 404.1567(a). Tr. 16. However, the ALJ also found Plaintiff could

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 6**

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could not climb ladders, ropes, or scaffolds. *Id.*

The ALJ then found that Plaintiff was unable to perform her past relevant work as a legal assistant or coffee maker barista. Tr. 19.

At **step five**, after considering her age, education, work experience, and RFC, the ALJ found Plaintiff had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. Tr. 19. The ALJ based this decision on the VE's testimony and his review of the Dictionary of Occupational Title ("DOT") that individuals with Plaintiff's age, education, work experience, and RFC can perform jobs like receptionist and information clerk. *Id.* at 20. As a result of these findings, the ALJ concluded Plaintiff was not disabled under the meaning of the Act. *Id.*

## VI.   Issues for Review

1. Did the ALJ err in improperly rejecting the claimant's subjective complaints and lay witness testimony?
2. Did the ALJ err in improperly rejecting the opinions of the claimant's treating and examining medical providers?
3. Did the ALJ err in failing to meet his burden at step five to identify specific jobs, available in significant numbers, which the claimant could perform in light of her specific functional limitations?

## VII.   Discussion

### A. The ALJ Improperly Assessed Plaintiff's Credibility

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably expected to produce some degree of the symptoms alleged. *Id.* Second,

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 7**

if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible to the degree they were inconsistent with the residual functional capacity assessment. Tr. 426. Accordingly, the question becomes whether the reasons set forth by the ALJ constitute clear and convincing ground to reject Plaintiff's subjective testimony. The ALJ based his credibility determination on three main reasons: (1) the ALJ found Plaintiff's treatment was routine and conservative; (2) the ALJ found that Plaintiff was not always compliant with treatment; and (3) the ALJ found that Plaintiff stated that she had osteoporosis, but there was only a finding of osteopenia in the record. Tr. 427-430.

### 1. Routine and Conservative Treatment

The ALJ rejected Plaintiff's subjective testimony about her disabling symptoms because "the treatment has been essentially routine and/or conservative in nature." Tr. 427. Defendant argues this is a clear and convincing reason because Dr. Christina Orr indicated in a report that an increase in steroid replacement medication was appropriate if Plaintiff was experiencing increased symptoms from stress and that Plaintiff "already has a good understanding of this." Tr. 320; ECF No. 21 at 9. Plaintiff counters that assertion and believes that a 60 mg per day dosage of steroid over the course of many years in a row is not a conservative treatment.

"Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Yet, in *Parra*, the court also relied on specific evidence apart

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 8**

from the conservative treatment to reject the claimant's subjective pain testimony. "For example, his subjective complaint of bursitis-related knee pain was contradicted by numerous Veterans Administration laboratory tests showing knee function within normal limits…." *Id.*

There is no precise legal definition of what constitutes a conservative or routine course of treatment for Plaintiff's conditions. Cases finding a course of treatment to be conservative generally deal with physical therapy and over-the-counter medication.[3] Cases where courts refuse to find a treatment course to be conservative generally involve medication not available over-the-counter, steroid injections, epidural shots, etc.[4] The case at bar does not fit neatly into one of those categories, particularly because heavy fatigue is a much more amorphous complaint than knee pain or back pain. Yet, the fact that it is so difficult to determine whether this course of treatment was conservative or not actually provides the answer to the ultimate issue. If the Court is unable to determine based on the record that a treatment is conservative and routine, it simply cannot be a

---

[3] *See Tommasetti*, 533 F.3d at 1039-40 (classifying physical therapy and anti-inflammatory medication, nerve stimulation, and a lumbosacral corset as conservative treatment for allegedly debilitating back pain). *See also Parra*, 481 F.3d at 750-751 (classifying over-the-counter pain medication as a conservative course of treatment for knee pain).

[4] *See Christie v. Astrue*, 2011 WL 4368189 *4 (C.D.Cal. 2011) (refusing to classify a course of treatment as conservative when the Plaintiff was taking narcotic pain medication, steroid injections, trigger point injections, and epidural shots when a more aggressive course of treatment, such as surgery, could have been available). *See also Wyatt v. Colvin*, 2013 WL 3233330 *14 (C.D.Cal. 2013) (refusing to classify physical therapy and steroid injections as a conservative course of treatment).

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 9**

clear and convincing reason to reject Plaintiff's subjective testimony.[5] Dr. Orr's report indicates that an increase in steroid dosage could have been appropriate, but that is not proof that her consistent 60 mg dosage was conservative—particularly in light of the fact that steroids have an abundance of side effects.[6]

### 2. Noncompliance

Defendant argues that Defendants noncompliance with treatment represents a specific, clear and convincing reason that the ALJ rejected Plaintiff's subjective testimony. ECF No. 21 at 11-12. In this vast record there is only one statement regarding noncompliance and it was made by Dr. Richards when she stated that Plaintiff "has a history of noncompliance with medical treatment and recommendation." Tr. 430. There are no treatment notes indicating a history of noncompliance and this Court would expect such documentation to more abundant in the record if this was truly a finding supported by substantial evidence.[7] As such, Plaintiff's alleged noncompliance is not a clear and convincing reason to reject her credibility.

//

---

[5] While the Court may not substitute its judgment for that of the ALJ when there are two reasonable interpretations of the evidence, the Court finds that this is not the case in this matter. The record on the issue of whether or not Plaintiff's course of treatment was conservative is neither developed enough nor specific enough to reasonably conclude one way or the other.

[6] *See* http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601102.html (visited October 7, 2014) (listing the numerous side effects of prednisone).

[7] *See Johnson v. Colvin*, 2014 WL 3353262 *5 (E.D. Wash. July 9, 2014) (discussing noncompliance and specifically referencing treatment notes indicating noncompliance in the record) *See* also <u>Thornsberry v. Astrue</u>, 2012 WL 628238 (S.D. Cal. Feb. 27, 2012) *aff'd sub nom. Thornsberry v. Colvin*, 552 F. App'x 691 (9th Cir. 2014) (discussing treatment notes indicating noncompliance).

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT * 10**

### 3. Osteopenia, Not Osteoporosis

The ALJ also rejected Plaintiff's subjective complaints and testimony because she said that she had osteoporosis, but there was only a finding of osteopenia in the record. Tr. 427. Plaintiff correctly points out that she was actually diagnosed with osteoporosis at one point. Tr. 170. While having a "tendency to exaggerate" is a valid credibility consideration, the Court is unpersuaded that Plaintiff's allegation that she had osteoporosis amounts to exaggeration. *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). It would be quite easy for a lay person to confuse the two very similar terms and that confusion could have been further amplified by the fact that she was actually diagnosed with osteoporosis at one point. As such, Plaintiff's assertion that she had osteoporosis when the record indicates only osteopenia does not represent a clear and convincing reason to reject her subjective testimony.

### B. Improperly Assessing Plaintiff's Credibility Was Not Harmless Error

An error may be considered harmless where it "occurred during an unnecessary exercise or procedure;" is non-prejudicial to the Plaintiff; is considered irrelevant to the determination of non-disability; or if the reviewing court can "confidently conclude" that no reasonable ALJ could have reached a different disability determination if erroneously disregarded testimony was credited. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

Discrediting Plaintiff's subjective testimony was not a harmless error because it was prejudicial and relevant to the eventual determination of non-disabled. Plaintiff's credibility is one of the central issues in this case because there is no test that can tell us how fatigued she really is. Accordingly, an improper assessment of Plaintiff's credibility cannot be a harmless error.

//

//

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 11**

### C. Plaintiff's Remaining Arguments

As remand is necessary to properly assess Plaintiff's credibility, which in turn may necessitate re-examining the opinion of Dr. Elsie Tupper whose opinion was rejected at least in part based on the Plaintiff's lack of credibility. The opinion of Mr. Steven Woolpert, the testimony of Plaintiff's daughter, and the ALJ's burden at Step Five are all (actually or potentially) tied to the credibility of the Plaintiff. Accordingly, the Court need not reach conclusions on the remaining arguments because it cannot do so without a proper credibility assessment.

## VIII. Remand

With error established, the Court has the discretion to remand for further proceedings or reverse and order an immediate award of benefits. *Harman v. Apfel,* 211 F.3d 1172, 1175–78 (9th Cir.2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179–81.

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the aforementioned error. On remand, the ALJ is directed to evaluate Plaintiff's subjective testimony and credibility. If the ALJ seeks to use conservative and routine treatment as a reason to discount Plaintiff's credibility, the record on that issue should be further developed.

//

//

**ORDER GRANTING PL.'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEF.'S MOTION FOR SUMMARY JUDGMENT \* 12**

q:\rhw\acivil\social security cases\2012 social security cases\drew (ss)\order sj.docx

## IX.  Conclusion

Based on the foregoing, the Court finds the Commissioner's decision is not free of legal error or supported by substantial evidence. Therefore, the case is reversed and remanded to the Commissioner for further proceedings not inconsistent with the Court's instructions noted above.

**Accordingly, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 21, is **DENIED**.

3. The Commissioner's decision denying Plaintiff benefits is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this Order.

4. The District Court Executive is directed to enter judgment in favor of Plaintiff and against Defendant.

5. An application for attorney's fees may be filed by separate motion.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this 15th day of October, 2014.

 *s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge